16 F.3d 411
 63 Fair Empl.Prac.Cas. (BNA) 960
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David STOCK, Plaintiff-Appellant,
v.
UNIVERSAL FOODS CORPORATION; Dennis W. Cassidy; Kenneth
Randall; Ronald C. Miller, Defendants-Appellees.
 No. 93-1448.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 20, 1993.
Decided Jan. 19, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson E. Legg, District Judge. (CA-92-557-L)
 Charles Barry Zuravin, Frank E. Trock, Columbia, MD, for appellant.
 L. William Gawlik, Huber & Lutche, Baltimore, MD, for appellees.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 David Stock appeals the district court's order granting summary judgment to Universal Foods Corporation ("Universal"), Dennis W. Cassidy, Kenneth Randall, and Ronald C. Miller in his reverse discrimination action brought pursuant to 42 U.S.C.Sec. 1981 (1988) and 42 U.S.C. Sec. 1985(3) (1988). Stock v. Universal Foods Corp., 817 F.Supp. 1300 (D. Md.1993). Upon de novo review, we affirm.
 
 
 2
 Stock is a white male who unsuccessfully sought a position as a maintenance mechanic at Universal. Stock, a tool and dye maker, contends that he was rejected solely because of his race and that the successful applicant, Tyrone Anderson, a black male, was selected solely because of his race.
 
 
 3
 Following a 1991 audit by the Equal Employment Opportunity Commission ("EEOC"), Universal adopted a formal affirmative action plan ("AAP"). The audit revealed violations of Executive Order 11246 and various federal fair employment statutes and regulations. Thus, Universal entered into a conciliation agreement in June 1991 under which Universal was required, among other things, to list all job openings with the Maryland State Job Service and in the newspaper.
 
 
 4
 In late August 1991, a position in Universal's Holabird Industrial Park plant became available when a day shift machinist resigned and the night shift machinist switched to the day shift. The night shift position that became available was for a general mechanic whose primary responsibility was servicing the packaging equipment. About half of Universal's plant maintenance mechanics are"papered" machinists, and the other half are not.[1] The two previous hires into the maintenance department were not papered machinists, and neither the outgoing day nor night shift machinists were papered.
 
 
 5
 Despite the AAP requirement that all job openings be advertised and listed with the state job service, Miller, the plant's Maintenance Superintendent, asked his maintenance mechanics whether they knew anyone who would be interested in filling the new vacancy. Stock heard about the job opening from Preston Sealover, a Universal maintenance mechanic, who told Stock that Universal was looking for a journeyman machinist.
 
 
 6
 Miller interviewed Stock for the position in September 1991 and told Stock that he was impressed with Stock's qualifications. However, because Miller had not followed the AAP's procedures for advertising the position, Cassidy, the General Superintendent, instructed Miller to advertise the position.
 
 
 7
 Universal listed the opening with the Maryland State Job Service and advertised the position in the local newspaper. The ad stated that Universal was seeking a machinist-mechanic with experience in plant maintenance for the third shift. Thirty-two men applied, and Miller chose the five applicants he considered most qualified for interviews. However, Miller told Stock and the maintenance workers at Universal that Stock was still the most qualified applicant.
 
 
 8
 None of the five applicants selected by Miller were minorities. Because Cassidy feared that Miller was improperly requiring more qualifications than necessary for the job, he urged Miller to reexamine the applicant pool to determine if there were qualified minority applicants. Miller reviewed the applications and interviewed Tyrone Anderson, a black male, who had vocational training from a respected school and production line equipment experience. Despite Miller's admitted personal prejudice against minorities, Miller was impressed by Anderson's qualifications and hired him.
 
 
 9
 The essence of Count I of Stock's complaint is that Anderson was not qualified for the maintenance mechanic position. Count II of the complaint alleged that the Defendants conspired to violate Stock's rights in violation of 42 U.S.C. Sec. 1985(3) (1988). Finding that the undisputed evidence showed that Anderson was qualified, and that Stock's Sec. 1985(3) claim failed because Stock is not a member of a class that has suffered historically pervasive discrimination, the district court granted summary judgment to all Defendants.
 
 
 10
 We review an award of summary judgment de novo. Higgins v. E. I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate where the record taken as a whole "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In ruling on a motion for summary judgment, a court must assess the evidence in the light most favorable to the party opposing the motion. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979).
 
 
 11
 Stock's complaint first alleged that Universal refused to hire him for a job vacancy solely on the basis of his race in violation of 42 U.S.C. Sec. 1981 (1988). Section 1981's prohibition of intentional racial discrimination includes discrimination against whites in hiring decisions. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280 (1976). A Sec. 1981 plaintiff must prove that he is a victim of intentional race discrimination, General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982), through evidence adequate to create an inference of an intent to discriminate. Cooper v. Federal Reserve Bank, 467 U.S. 867, 874 (1984).
 
 
 12
 The district court followed the Eleventh Circuit in finding that a reverse discrimination plaintiff raises an inference of racial discrimination when he proves: (1) that he belongs to a class; (2) that he applied for and was qualified for a job; (3) that he was rejected for the job; and (4) that the job was filled by a minority group member. See Wilson v. Bailey, 934 F.2d 301, 304 (11th Cir.1991).[2] The district court properly found that Stock met his initial burden of raising an inference of impermissible racial discrimination. Stock offered proof that he applied for the open position, was undeniably qualified for the job, was rejected, and the job was filled by a minority applicant. Thus, the district court properly shifted the burden to Universal to enunciate a legitimate, non-discriminatory reason for its decision not to hire Stock.
 
 
 13
 The district court correctly found that Universal had met that burden by presenting evidence that the AAP was implemented in response to past discrimination following a negative audit by the EEOC. See Valentine v. Smith, 654 F.2d 503, 510 (8th Cir.) (holding AAP bona fide if it is substantially related to its remedial purpose), cert. denied, 454 U.S. 1124 (1981). An AAP is substantially related to its remedial purpose if it does not trammel the rights of nonminorities, is designed to remedy past discrimination, and is temporary. Lilly v. City of Beckley, West Virginia, 797 F.2d 191 (4th Cir.1986). Indeed, Stock conceded that Universal's AAP was bona fide on its face. Moreover, Universal admitted that it had historically discriminated against women and other minorities, and that women and minorities were underutilized in the craft positions. Furthermore, Universal's AAP set annual hiring goals, did not contain hiring quotas, and was of limited duration. See Valentine, 654 F.2d at 510. Thus, the undisputed evidence shows the AAP was bona fide.
 
 
 14
 The district court found that Anderson was qualified for the maintenance position on the night shift, and we agree. Stock asserted that the maintenance mechanic position required a journeyman machinist or a tool and dye maker. However, the previous night mechanic was not a papered machinist, and half of the machinists in the department were not papered machinists. Perhaps more importantly, the newspaper advertisement did not specify that training as a journeyman machinist or tool and dye maker was required. Anderson possessed the requisite skills necessary for the machinist vacancy.
 
 
 15
 In support of his claim that the job opening required a journeyman machinist, Stock noted (1) that Preston Sealover testified at his deposition that Miller told him that the job required a journeyman machinist, and (2) that after the job was advertised in the paper, Miller initially chose five papered machinists to interview. These "facts" do not create a material dispute preventing summary judgment. We note that Sealover's testimony was inadmissible hearsay and thus, was "not suitable grist for the summary judgment mill." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990); see also Maryland Highways Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1251 (4th Cir.), cert. denied, 60 U.S.L.W. 3342 (U.S.1991). Moreover, Miller stated under oath that being a journeyman machinist was not a requirement for the job and Randall, Miller's superior and the plant manager, corroborated that there was no such requirement. Therefore, the district court correctly found that the undisputed evidence showed that the job opening did not require a journeyman machinist.
 
 
 16
 Viewing the evidence in the light most favorable to Stock, we hold that the district court correctly found that Anderson was qualified for the position and that Universal acted pursuant to a bona fide AAP. Stock simply failed to present an issue of material fact to preclude summary judgment. Accordingly, we affirm the grant of summary judgment on Stock's first claim.
 
 
 17
 Stock's second claim alleged that Universal and the other Defendants conspired, in violation of 42 U.S.C. Sec. 1985(3) (1988), to deprive him of his right to make and enforce contracts under Sec. 1981. Stock later conceded that it is a legal impossibility for a corporation to conspire with its employees. See Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1184 (4th Cir.1986), cert. denied, 482 U.S. 929 (1987). Thus, Stock consented to dismissal of Universal as a Defendant on that claim.
 
 
 18
 We affirm the district court's grant of summary judgment to the remaining Defendants on the Sec. 1985(3) claim. Stock concedes that the basis of his Sec. 1985 claim is a violation of Sec. 1981. As we have already discussed, however, there is no Sec. 1981 violation in this case. Thus, we affirm the district court's grant of summary judgment on the Sec. 1985(3) claim.
 
 
 19
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 A "journeyman machinist," also called a "papered machinist," is a machinist who has completed an apprenticeship and extra course work
 
 
 [2]
 The district court noted that the courts are split on whether a white plaintiff is entitled to the same inference of discrimination as a minority plaintiff when he proves a prima facie case. The Sixth, Eighth, and District of Columbia Circuits have held that a white male plaintiff who otherwise makes out a prima facie case is not entitled to an inference of discrimination, because the proof scheme set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is premised upon this country's history of racial discrimination against minority groups, particularly blacks. See Donaghy v. City of Omaha, 933 F.2d 1448, 1458 (8th Cir.1991), cert. denied, 60 U.S.L.W. 3498 (U.S.1992); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67-68 (6th Cir.1985); Lanphear v. Prokop, 703 F.2d 1311, 1315 (D.C.Cir.1983). Thus, these courts hold that a reverse discrimination plaintiff raises an inference of impermissible racial discrimination when he satisfies the McDonnell Douglas prima facie test and also presents evidence of background circumstances to support the suspicion that the defendant discriminates against the majority. Murray, 770 F.2d at 67. We do not have to resolve this issue here because even under the less demanding Eleventh Circuit test, Stock cannot prevail